UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80026-AMC-4

**UNITED STATES,**

    **Plaintiff,**

vs.

**TYLER ROMAN, etc., et.al.,**

    **Defendant(s).**

_____/

### DEFENDANT ROMAN'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, TYLER ROMAN (the "Defendant"), by and through his undersigned counsel, and hereby files the following sentencing memorandum and reasons in support of his motion for downward variance, pursuant to 18 U.S.C. § 1353(a), and as grounds therefore would show:

FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE

1.  18 U.S.C. § 1353(a) provides, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

2.  18 U.S.C. § 1353(a) further states, "[t]he court, in determining the particular sentence to be imposed, shall consider—"

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)    the need for the sentence imposed;
(3)    the kinds of sentences available;
(4)    the kinds of sentence and the sentencing range established;
(5)    any pertinent policy statement;
(6)    the need to avoid unwarranted sentence disparities among defendants with similar

1

records who have been found guilty of similar conduct; and,

(7) the need to provide restitution to any victims of the offense.

3. 18 U.S.C. § 1353(a)(2) is broken down into the following factors:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and,

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

4. 18 U.S.C. § 1353(a)(4) articulates further factors to be considered by the Court:

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28.

5. Finally, 18 U.S.C. § 1353(a)(5) states the following instructions regarding a pertinent policy statement:

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is

sentenced.

6. 18 U.S.C. § 1353(b) provides guidance to the Court in the application of the factors listed above as follows: "the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating *or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission* in formulating the guidelines that should result in a sentence different from that described." [Emphasis added].

7. 18 U.S.C. § 1353(b) further states, "[i]n determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission."

8. Lastly, 18 U.S.C. § 1353(b) further states, "[i]n the absence of an applicable sentencing guideline, *the court shall impose an appropriate sentence*, having due regard for the purposes set forth in subsection (a)(2). [Emphasis added].

## INTRODUCTION AND PROCEDURAL HISTORY

9. On October 1, 2021, the Defendant pled guilty to one count of conspiracy to possess with intent to distribute 400 grams or more of fentanyl and 100 grams or more of heroin, in violation of 21 U.S.C. § 846 and 841(a)(1),(b)(1)(A).

10. The Defendant provided substantial assistance to the Plaintiff that resulted in the Co-Defendant, Emilio Santiago ("Santiago") pleading guilty to count one of a five-count Indictment. Count one charged conspiracy to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi) on August 6, 2021.

11. The Defendant also provided substantial assistance to the Plaintiff that resulted in the

Co-Defendant, Jose Esquer ("Esquer") pleading guilty to count one of a five-count Indictment. Count one charged conspiracy to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi) on August 6, 2021.

12. The Defendant additionally provided substantial assistance to the Plaintiff that resulted in the Co-Defendant, Diego Navarro ("Navarro") pleading guilty to count one of a five-count Indictment. Count one charged conspiracy to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi) on August 6, 2021.

13. The Defendant additionally provided substantial assistance to the Plaintiff that resulted in the Co-Defendant, Alireza Hendijani ("Hendijani") pleading guilty to count one of a five-count Indictment. Count one charged conspiracy to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi).

14. The Defendant additionally provided substantial assistance to the Plaintiff that resulted in the Co-Defendant, Joshua Grauer ("Grauer") pleading guilty to count one of a five-count Indictment. Count one charged conspiracy to possess with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi) on October 6, 2021.

15. The substantial assistance of the Defendant resulted in a Judgment against Santiago for 240 months of imprisonment, followed by 5 years of supervised release.

16. Further, Santiago objected to the recommended sentence in the Pre-Sentencing Report, but when he learned that the Defendant was set to testify against him, he withdrew his objections.

17. The substantial assistance of the Defendant resulted in a Judgment against Hendijani for 210 months of imprisonment, followed by 5 years of supervised release.

18. The substantial assistance of the Defendant resulted in a Judgment against Navarro for

110 months of imprisonment, followed by 3 years of supervised release.

19. The substantial assistance of the Defendant resulted in a Judgment against Esquer for 120 months of imprisonment, followed by 2 years of supervised release.

20. The substantial assistance of the Defendant resulted in a Judgment against Grauer for 120 months of imprisonment, followed by 5 years of supervised release.

21. The substantial assistance of the Defendant has directly resulted in judgments against the above-referenced Co-Defendants for a total of 800 years of imprisonment for the primary actors in an ongoing criminal scheme, followed by 20 years of supervised release.

22. The sentencing of the Defendant is currently scheduled for March 21st, 2022.

23. Ordinarily, the Defendant would be entitled to receive a Section 5K1.1 cooperation credit letter, pursuant to United States Sentencing Guidelines to mitigate his potential sentence.

24. However, the Defendant is still providing substantial assistance to the government in two (2) separate indictment that has not yet resulted in a plea. The change of plea to a guilty plea is not scheduled until April in (Matter #1). As such, the Defendant would be entitled to further mitigation or reduction of his potential sentence under Rule 35(b), Federal Rules of Civil Procedure.

25. The Defendant is also providing substantial assistance in an ongoing, multiple defendant indictment for Conspiracy to Commit Medicare Fraud, Violations of the Stark Act, and Violations of the Anti-Kickback Statute recently filed in the Southern District of Florida (Matter #2). The Defendant would be entitled to further mitigation or reduction of his potential sentence under Rule 35(b), Federal Rules of Civil Procedure.

26. Rather than the present piecemeal motions to the Court for a mitigation or reduction in

the potential sentence, the government would prefer to be sentenced all at one time, taking in every factor set forth above for the mitigation and/or reduction of his sentence taking into account the Defendants full substantial assistance in all three indictments and one (1) State case.

27. A Presentence Investigative Report ("PSR") was conducted by Frances Weisberg, United States Probation.

28. The PSR was filed on November 5, 2021 [DE-191].

29. After reviewing the PSR with the Defendant, there were no objections filed by the defense.

## PSR FINDINGS AND GUIDELINE RANGE

30. The government and the Defendant agree that the Defendant's Total Base Offense Level to be 30, under all relevant conduct.

31. That determination was based upon a Base Offense Level of 30 since the offense involved at least 400 grams or more of fentanyl and 100 grams or more of heroin.

32. The government and the Defendant agreed that "no further applicable adjustments or departures under the guidelines except any potential Rule 35 or § 5K1.1 motions and acceptance of responsibility.

33. The government and the Defendant agreed that "The parties jointly recommend that the sentence in this case run concurrent to the sentence imposed in the supervised release violation in Docket No. 0:14-CR-60165-WPD."

34. Finally, the government and the Defendant agreed that "The defendant is free to argue for any sentence,"

35.     Additionally, the defendant clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels, pursuant to §3E1.1(a).

36.     Pursuant to §3E1.1(b), the Defendant assisted authorities in the investigation of his own misconduct by timely notifying authorities of his intention to plead guilty and should receive an additional one level.

37.     The Total Offense Level for the Defendant, as determined by the PSR is 27.

38.     The Defendant is facing a minimum term of imprisonment of ten (10) years, and a maximum sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A).

39.     Based upon a total offense level of 27 and a criminal history category of VI, the guideline imprisonment range is 130 months to 162 months.

40.     The guideline range for a term of supervised release is five years, § 5D1.2(c).

41.     Pursuant to the plea agreement, there are no further applicable adjustments or departures under the guidelines except any potential Rule 35 or § 5K1.1 motions, which will be substantial in this instance.

CAREER OFFENDER STATUS

42.     The Defendant had four (4) offenses as a juvenile from February 14, 2005, to November 8, 2006. The Defendant scored no additional points due to his juvenile criminal history.

43.     The Defendant had eight (8) offenses as an adult from July 27, 2006, to February 14, 2005, to July 11, 2014, not including the conduct set forth in this memorandum. The Defendant scored thirteen (13) additional points due to his adult criminal history.

44.     A total of 13 criminal history points establish a criminal history for the Defendant at a category of VI.

45.     Despite the Defendant's past criminal history, he is not deemed to be a Career Criminal,

and sincerely believes that he is capable of rehabilitation, if given the opportunity.

<u>ROMAN'S MOTION FOR VARIANCE
FROM THE ADVISORY GUIDELINE RANGE</u>

**Romans History and Characteristics**

46. The Defendant accepts and agrees with the portion of the PSR which accurately describes his personal history and characteristics.

47. Further, the Defendant contends that his past criminal history has a direct correlation with his personal history and characteristics, as detailed in the PSR. He proffers to this Court that he is a product of his personal history and characteristics.

48. The Defendant believes the findings in the PSR concerning his history and characteristics (his age, extent of his education, health, background, family history, substance abuse, environment, and life experience) support a downward sentencing variance in this case despite the seriousness of his crime and his criminal history.

**Roman's Assistance in Exposing the Scheme**

49. The Defendant accepts and agrees with the portion of the PSR which accurately describes the length and breadth of the scheme of the other Co-Defendants. (See PSR ¶ 7-89). The Defendant made no objection to that portion of the PSR detailing the scheme.

50. The Defendant contends that the sheer complexity and mechanism of the scheme was such that the government would have had to expense exponentially more resources to put all the pieces together, make the necessary arrests, and get drugs off of the street.

51. The Defendant further contends that his direct involvement in enabling the government to gather the information, intelligence and evidence dramatically accelerated the government's

operation to shut the scheme down.

52. The assistance of the Defendant, as detailed in the detailed description of the scheme in the PSR cannot be underestimated, and was, in fact, acknowledged by the PSR. The Defendant was integral in the resolution of the government's investigation of the scheme and prosecution of actors engaged in the scheme.

53. The Defendant respectfully contends that, given the amount of risk and danger the Defendant put himself in to assist the government (and is currently still assisting the government) it should be reflected in a corresponding variance in the Advisory Guideline Range.

## ARGUMENT

54. A district court should always begin l sentencing proceedings by correctly calculating the applicable Guidelines range. See *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).

55. The Defendant does not have a legal objection to the guideline range calculated in the PSR; however, he is seeking a downward departure and/or variance akin to reducing his guideline range.

56. The Guidelines are not the only consideration in sentencing.

57. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider § 3553(a) factors to determine whether they support the sentence requested by a party.

58. As explained by the Supreme Court in *Rita*, *supra*, stated, in so doing, the judge may not presume that the Guidelines range is reasonable. See *Id*. at 127 S. Ct. 2456.

59. The judge must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, the judge must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id*., 127 S. Ct. 2456; see also, *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596-597 (2007).

60. The guidelines are ***advisory only***. [Emphasis added]. *See United States v. Booker*, 543 U.S. 220, 125 S.Ct. 7381

61. The ultimate goal is a reasonable sentence, and one which is no greater than that required to adequately punish. *See United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005).

62. Although the guidelines are treated as advisory after Booker, the application of section 3553(a) is mandatory.

63. However, a district court is not required to explicitly comment on every 3553(a) factor as long as the record makes clear that the court took the factors into account at sentencing. *See U.S. v. Howe*, 543 F.3d 128, 137 (3d Cir.2008) (citing *U.S. v. Parker*, 462 F.3d 273, 278 (3d Cir.2006)).

64. The court must consider the totality of circumstances and make an individualized assessment, specific to the defendant before the court, of the 3553(a) sentencing factors. *Id*. at 137 (citing *Gall*, 128 S.Ct. at 597)).

65. Sentencing a defendant below the guideline range is not presumptively unreasonable. *See U.S. v. Wadena*, 470 F.3d 735, 738 (8th Cir.2006).

66. A sentence is not unreasonable simply because it falls outside the advisory Guidelines range. *See Gall*, 128 S. Ct. at 597.

67. The sentencing court has "**broad discretion** in imposing a sentence within the statutory range." See *U.S. v. Tomko*, 562 F.3d 558, 564 (3d Cir.2009) (quoting *Booker*, 543 U.S. at 233).

68. "In the wake of *Booker*, it is essential that district courts make an "individualized assessment based on the facts presented." *Id*. at 567 (quoting *Gall*, 128 S.Ct. at 597).

69. In *United States v. Diaz*, the court placed "almost no weight" on the guidelines range for the defendant middleman in a heroin sale, given that "guidelines ranges for drug trafficking offenses are not based on empirical data, commission expertise, or," as discussed later in this opinion, "the actual culpability of defendants." See 2013 WL 322243, at fn1 (E.D.N.Y. Jan. 28, 2013) (Gleeson, J.).

70. The court reasoned, based on *Kimbrough*, that a "district court's authority also recognizes that the "court has authority under 18 U.S.C. § 3553(a) to grant a similar two-level reduction to the newly eligible *safety valve offenders not meeting the guideline criteria*." [Emphasis added].

71. If the Court should do so, it will be considered a variance from the Defendant's total offense level of 27.

72. Consequently, the Defendant qualifies for the two-level reduction and respectfully requests that this Court grant a downward departure or variance to an offense level 25.

73. The is seeking a downward variance akin to two more offense levels for his role in the offense, history, and characteristics, and because he provided a substantial amount of information to the Government, although the information has not resulted in a 5K1.1 motion.

74. The Defendant should receive credit for his information and a variance akin to a two-level reduction is reasonable given the nature and circumstances of the offense and the history

and characteristics of the defendant.

75.	A sentence of 130 months in prison is more than sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public.

76.	The undersigned counsel for the Defendant will further articulate the specific basis for this variance request at the sentencing hearing.

## CONCLUSION

Tyler Roman requests this Court to grant his motion for downward sentencing variance and to sentence him to a term of imprisonment of 130 months and a term of supervised release.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of March 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Respectfully submitted,

**AARON M. COHEN, P.A.**
*Attorney for the Defendant*
110 Via D'Este, #303
Delray Beach, Florida 33445
Telephone:	(561) 542-5494
Facsimile:	(561) 431.8162
Service: amc@aaronmcohenpa.com

By: /s/ Aaron M. Cohen
AARON M. COHEN, ESQUIRE
Florida Bar No.: 541427