**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

**CASE NO.:  21-cr-80026-AMC-4**

```
UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )        February 8, 2022
v.                             )
                               )
TYLER ROMAN,                   )
                               )        Pages 1 - 26
             Defendant.        )
_____/
```

GARCIA HEARING

BEFORE THE HONORABLE BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Plaintiff:

```
                    UNITED STATES ATTORNEY'S OFFICE
                    500 South Australian Avenue,
                    4th Floor,
                    West Palm Beach, FL 33401
                    BY:  MORTON GYIRES, AUSA
(Telephonically)    BY:  PATRICK QUEENAN, AUSA
```

1
  APPEARANCES CONTINUED:
2

3  On behalf of the Defendant:

4                          AARON M. COHEN, P.A.
                           110 Via D'este, 303-D,
5                          Delray Beach, FL 33445
                           BY:  AARON M. COHEN, ESQ.
6

7

8                          LAW OFFICES OF RICHARD F. DELLA FERA, P.A.
                           500 East Broward Boulevard
9                          Suite 1710,
                           Fort Lauderdale, FL 33394
10                         BY:  RICHARD F. DELLA FERA, ESQ.

11

12

13
   Transcribed By:
14

                           BONNIE JOY LEWIS, R.P.R.
15                         7001 SW 13 Street
                           Pembroke Pines, FL  33023
16                         954-985-8875
                           caselawrptg@gmail.com
17

18

19

20

21

22

23

24

25

```
 1                    (Thereupon, the following proceeding was held:)
 2              THE COURT:  All right.  Well, good afternoon,
 3    everyone.
 4              This is Case Number 21-80026; United States of America
 5    versus Tyler Roman.
 6              Let me start with appearances, please.  I will start
 7    with the Government.
 8              MR. GYIRES:  Good afternoon, Your Honor.
 9              Marton Gyires for the United States.  Beside me at the
10    table is Agent Abe Reyes with DEA.  And on the telephone is
11    Patrick Queenan with Main Justice.
12              THE COURT:  Okay.  Good afternoon, Mr. Gyires and
13    Agent Reyes.
14              MR. QUEENAN:  Good afternoon, Judge.
15              THE COURT:  Good afternoon.
16              All right.  And on behalf of the Defense?
17              MR. WALSH:  Good afternoon, Judge.
18              Attorney Aaron Cohen for the Defendant Tyler Roman
19    today.
20              THE COURT:  All right.  Mr. Cohen, good afternoon.
21              MR. WALSH:  Good afternoon.
22              MR. DELLA FERA:  Good afternoon.
23              Richard Della Fera on behalf Tyler Roman.  I was
24    appointed by Judge Matthewman in an investigative manner.
25              THE COURT:  Understood.
```

1          MR. DELLA FERA:  Not in the case that you have

2     announced.

3          THE COURT:  That's why we're here.  I understand.

4     Thank you, Mr. Della Fera.  Good to see you again.

5          MR. DELLA FERA:  Good to see you.

6          THE COURT:  And Mr. Roman, good afternoon.

7          THE DEFENDANT:  Good afternoon, sir.

8          THE COURT:  So, yes, the reason we are here, Judge

9     Matthewman alerted Judge Canon and me to the situation

10    involving Mr. Roman.

11          And we thought it was prudent to get everybody

12    together and let's make sure Mr. Roman is aware of what his

13    rights are and make sure his rights are protected.  And if the

14    Court needs to do anything that Judge Canon can be aware of the

15    situation.

16          So that's the purpose of this afternoon's proceeding

17    is to kind of have that discussion.  So here's what I

18    understand based on what has been told to me and, then, you all

19    can correct me if I've got it inaccurately.

20          Mr. Roman is charged in this particular case, Case

21    21-80026, and has hired Mr. Cohen to represent him.  Separately

22    Mr. Roman is involved in an investigative manner in cooperating

23    or discussing, talking to the Government, I guess is the best

24    way to put it.  And Mr. Cohen has a conflict in that matter and

25    that's why Mr. Della Fera was appointed to represent Mr. Roman

1 | in the investigative manner.

2 |     As I understand it, Mr. Gyires, you are the prosecutor

3 | on the charged matter.

4 |     And Mr. Queenan, you are the prosecutor on the

5 | investigative matter; is that correct, Mr. Queenan?

6 |     MR. QUEENAN:  That would be correct, Judge.

7 |     THE COURT:  Okay.  Great.  Thank you.

8 |     All right.  So it seems to me that the issue that

9 | needs to be addressed today is -- I am going to assume based on

10 | many years of experience that one of the things that Mr. Roman

11 | may be hoping is because of his participation in the

12 | investigative matter, he may get some benefit in the pending

13 | criminal matter.

14 |     And I guess the logistical question that I need to

15 | hear from the parties on is how does that happen if Mr. Cohen

16 | is his lawyer at the sentencing, but doesn't know or can't talk

17 | to Mr. Della Fera or Mr. Roman about the investigative matter

18 | and vice-versa.

19 |     So, Mr. Cohen, what are your thoughts on the best way

20 | to go forward here?

21 |     You could stay seated if you are more comfortable.

22 | That's certainly fine.  Just use the microphone.  Otherwise,

23 | Mr. Queenan won't be able to hear you.

24 |     MR. COHEN:  That's a good question, Judge.

25 |     Obviously the other matter has nothing to do with this

 1  case whatsoever.  I'm confident that I can maintain my ethical

 2  integrity by not having any communication with either Mr.

 3  Roman's appointed counsel or Mr. Roman about that matter.

 4          THE COURT:  Surely.

 5          MR. COHEN:  I'm confident of that.

 6          What I think we could be possibly thinking is at

 7  sentencing, which is coming up in March, is I will present my

 8  argument as it relates to my cooperation, which has been

 9  extensive -- or Mr. Roman's cooperation -- and allowing

10  appointed counsel to argue why more cooperation might be

11  appropriate based upon any discussions he has with Mr. Queenan

12  and/or Mr. Gyires.

13          THE COURT:  Okay.  I am just trying to think how that

14  plays out, though.

15          Because if you are not supposed to be privy with what

16  is being discussed with Mr. Queenan, how can you sit in the

17  courtroom while Mr. Della Fera makes a presentation to Judge

18  Canon on behalf of Mr. Roman so that you can then come back at

19  the end and say this is the sentence you should give him?  That

20  is what I'm struggling with.

21          And let me preface all this by saying I have no doubt

22  that the lawyers -- I have known Mr. Della Fera for 30 years.

23  And Mr. Cohen, I have known you as well, but I have no reason

24  to doubt that you all are acting as ethically as you possibly

25  can.

1          So that's not the question here.  Mr. Roman, the

2     question is -- Mr. Roman, I'm going to talk directly to you

3     right now.  You have a Sixth Amendment right to be represented

4     and have the best possible representation that you can.  And

5     what the law says that the Court has to have an independent

6     concern that those rights are protected.

7          So anything that I am going to say today is not in any

8     way to suggest Mr. Cohen is not a great lawyer and he is not

9     doing a great job for you.  It is simply I want to make sure

10    that when you go to sentencing in front of Judge Canon you are

11    as best represented as you can.

12         Do you understand, Mr. Roman?

13         THE DEFENDANT:  Yes, sir.  Understood.

14         THE COURT:  Very well.  Mr. Della Fera, do you have

15    any thoughts on how we should proceed?

16         MR. DELLA FERA:  Judge, Mr. Queenan and I had a

17    conversation yesterday and he is probably in a better position

18    to tell you what I'm about to tell you.

19         But it seems to me the timing of things is going to be

20    such that Mr. Roman will be sentenced on the present case long

21    before any assistance that he is rendering in the investigative

22    case will come to fruition and Mr. Queenan and I discussed it

23    by way of a Rule 35.

24         THE COURT:  I see.

25         MR. DELLA FERA:  So that's sort of how I see the

1    timing of things happening.  Mr. Cohen would represent, you

2    know, with Mr. Roman's approval, Mr. Cohen would represent

3    Mr. Roman in front of the sentencing that is set in January to

4    discuss with Judge Canon the cooperation that Mr. Roman has

5    given, that Mr. Cohen is privy of and Mr. Gyires is privy of.

6              And then, once the investigative matter, which hasn't

7    even come to indictment yet --

8              THE COURT:  Uh-huh.

9              MR. DELLA FERA:  Once that's indicted and assuming

10   that everything goes the way we're hoping it goes and Mr. Roman

11   is entitled to a Rule 35, then, I would appear before Judge

12   Canon with -- well, I guess with Mr. Gyires because he is the

13   prosecutor on the case, as well as Mr. Queenan, to argue for an

14   even further reduction of Mr. Roman's sentence based on

15   unrelated, but further cooperation to the Government.

16             THE COURT:  Okay.  So it would be under Rule 35 post

17   sentencing motion to reduce whatever sentence Judge Canon

18   imposes at this time.

19             Mr. Gyires, yes.

20             MR. GYIRES:  I think that's right on point.  I hate to

21   make things really complicated but --

22             THE COURT:  That's okay.

23             MR. GYIRES:  But there's another Defendant who is set

24   for a plea and it has been moved a bunch of times and it is set

25   for a plea a week after Mr. Roman's sentencing.  And so that

1  Defendant also might effect Mr. Roman's sentence.  So --

2          THE COURT:  His sentence based on your case.

3          So is it possible that you would ask either to have

4  Mr. Roman's sentencing continued until after the other

5  individual is sentenced or --

6          MR. GYIRES:  That would be great but --

7          THE COURT:  -- or that Mr. Roman's continued

8  cooperation against that individual could get looped into a

9  subsequent Rule 35 if there is to be one?

10          MR. GYIRES:  The latter is more likely because Judge

11  Canon, if I'm remembering correctly in her latest order

12  granting a continuance, said it is the last one, but one never

13  knows.

14          You never know, but it seems unlikely that it will get

15  moved.  So it's just an extra little wrinkle that I'm not

16  trying to make it complicated.  I just want Your Honor to know.

17  So if there is a Rule 35, there's a chance that it will be more

18  than just the new investigation.

19          THE COURT:  Understood.  Thank you, Mr. Gyires and

20  thank you all, Counsel.  That's very informative.

21          So it seems to me maybe this is the best way to frame

22  it and I will proceed within this framework if you will all

23  agree.

24          It seems to me that the discussion that I have to have

25  today with Mr. Roman is that he is effectively giving up his

1  right to argue at the currently scheduled sentencing in front

2  of Judge Canon.  He is giving up his ability to argue for a

3  further sentencing reduction based on whatever cooperation has

4  occurred to date.

5          Because as the lawyers know, even if the Government

6  hasn't filed a Rule 35 motion at the time of the initial

7  sentencing, counsel could argue under the Section 3553 factors

8  that Mr. Roman has been cooperative.  He has been trying to

9  help the Government.

10          Maybe the Government doesn't think this rises to the

11  level of substantial assistance, but the Court ought to take

12  that into account when looking into the history and

13  characteristics of the Defendant, et cetera.

14          It sounds to me -- well, it is obvious to me, Mr.

15  Cohen, you can't make that argument because you don't know what

16  he has been doing in the other case.  So, effectively, that is

17  the conflict or the issue that I think I need to address with

18  Mr. Roman.  And to also make sure the record clear that Mr.

19  Roman understands that there is no promise that he is ever

20  going to get a Rule 35.

21          So it is potentially possible that whatever

22  cooperation that he is giving in both cases, he may never get a

23  sentencing benefit for that at all.

24          I am going to start with Mr. Cohen.  Do you agree

25  that's the conversation that I need to have with Mr. Roman

1  today?

2          MR. COHEN:  I do agree, Judge.

3          THE COURT:  Mr. Della Fera, do you think that's the

4  right conversation?

5          MR. DELLA FERA:  I do, Judge.

6          THE COURT:  And Mr. Gyires?

7          MR. GYIRES:  I think so, yes.

8          THE COURT:  And Mr. Queenan?

9          MR. QUEENAN:  I agree, Judge.

10         THE COURT:  Okay.  Very well.

11         So within that framework, then, I am going to conduct

12  sort of a modified *Garcia* hearing.  So, again, Mr. Roman, you

13  and the Agent are the only non lawyers in the room.

14         *Garcia* is a court case that talks about what do you do

15  in a situation where a lawyer may have a conflict of interest

16  that could limit the lawyer's ability to make certain arguments

17  on behalf of the client.

18         So I just need to ask you some questions and make sure

19  that you understand.  And if you ultimately decide that's what

20  you want to do, then I will tell that to Judge Canon and she

21  will proceed accordingly.

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  So if I can ask you to raise your hand.

24         THE DEFENDANT:  (Complied.)

25         THE COURT:  Do you swear or affirm that your

1  statements in response to my questions today will be the truth,

2  the whole truth and nothing but the truth?

3          THE DEFENDANT:  I do, sir.

4          THE COURT:  Okay.  Thank you.  You can put down your

5  hand.

6  (Defendant sworn.)

7          THE COURT:  So in this case, as you have been

8  listening, you have a Sixth Amendment right to be represented

9  by a lawyer who does not have a conflict of interest and there

10 are two different kinds of conflicts of interest.

11          There are conflicts of interest which violate attorney

12 ethical rules.  So the Florida Bar and bars of different states

13 publish Rules of Ethics and a lawyer can run afoul of those.

14 And one of the ways a lawyer can run afoul of those is by

15 representing two people at the same time or by letting the

16 lawyer's personal interest override the client's best interest.

17 Things like that.  So that's an ethical conflict.

18          There are also things that are called legal conflicts.

19 So they don't necessarily violate the cannons of ethics, but

20 they do infringe upon the client's Sixth Amendment rights as a

21 matter of the law and not as a matter of ethics.  I think you

22 are dealing with the latter situation.

23          So I make that distinction very clearly because,

24 again, I have no reason to believe -- I haven't done a

25 comprehensive look, but I have no reason to believe that the

1  situation Mr. Cohen is in violates any rules of ethics at all.

2  So I am not suggesting that Mr. Cohen has done anything wrong

3  here.  But this is all about you and your rights and I need to

4  protect your rights.

5        So the legal conflict here is simply that Mr. Cohen,

6  your chosen lawyer, cannot make certain arguments at your

7  sentencing because of his ethical obligations to somebody else.

8        So specifics of this case and that is the conflict.

9  The conflict is he is limited in what he can say on your

10 behalf.  And the specific conflict here is at the sentencing,

11 the law that controls the sentencing is Title 18, Section 3553.

12        And under Section 3553, Judge Canon is required to

13 look at a number of factors; the history and characteristics of

14 the Defendant, the nature and circumstances of the offense and

15 a few others, but those are the two big ones as it pertains to

16 today.  Okay.  She also has to look at the Sentencing

17 Guidelines.

18        And I don't recall, but I think I took the plea in

19 this case, did I not?

20        MR. GYIRES:  Yes.

21        THE COURT:  So we talked about the Sentencing

22 Guidelines and I remember now.  Okay.  So that is in addition

23 to the Sentencing Guidelines.

24        So under the law, though, under the Sentencing

25 Guidelines, if the Government believes that your cooperation

1   has risen to the level of substantial assistance, they can make

2   a motion to Judge Canon and say that the Government is

3   recommending that your sentence be reduced.

4          Okay.  Obviously that's something one hopes for when

5   one cooperates with the Government, but that's within the

6   framework of the Sentencing Guidelines and the Government has

7   to agree that you have substantially assisted them.

8          Separate and apart from that -- and your lawyer cannot

9   do anything about that.  Until the Government files the motion,

10  your lawyer can't do anything about that.

11         But assume the situation where the Government doesn't

12  think your cooperation has risen to the level of substantial

13  assistance, but you want Judge Canon to know that as part of

14  the history and characteristics of you, you have accepted

15  responsibility.  You are trying to help the Government.  You

16  are doing everything you can to mitigate harm.  All of which

17  are very common arguments that criminal defense lawyers want to

18  make to the Judge.

19         And the criminal defense lawyer would say, well, Judge

20  Canon, even though the Government doesn't think you should

21  reduce his sentence for his cooperation you still can.  And in

22  fact, as a matter of law, she can.

23         If your lawyer got up in front of Judge Canon and

24  said, look, he has been totally truthful.  He has met with the

25  Government, you know, 15 times.  They have corroborated

1   everything he told them.  It's not our fault they haven't

2   arrested anybody yet.  He's doing the best he can and you

3   should give him credit for that.  Your lawyer could make that

4   argument in the normal case.

5          Here, the problem is Mr. Cohen is limited in his

6   ability to do that.  He can certainly argue for that sort of a

7   benefit for you based upon your cooperation in Mr. Gyires'

8   case, but he can't argue for that because of your cooperation

9   in Mr. Queenan's case.

10          So, first of all, I know that's a long windup, but do

11  you understand that is the framework we are dealing with here?

12          THE DEFENDANT:  I understand, Your Honor.

13          THE COURT:  Okay.  So separate and apart from that,

14  under the law even if you are sentenced initially by Judge

15  Canon you can, under certain circumstances, come back to court

16  and try to have that sentence reduced based upon cooperation.

17  That's under Rule 35 of the Federal Rules of Criminal

18  Procedure.  You've heard us talking about a Rule 35?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  So that's how that arises.

21          There again, however, you can only come back to the

22  Court on a Rule 35 if the Government files a motion.

23          So the Government has to agree that you have

24  substantially assisted and if they do and generally it's within

25  a year of your sentencing with a few exceptions, but basically

1    the big issue is you don't get to come back to court and ask

2    for a further reduction unless the Government opens the door

3    for you.

4            Do you understand that?

5            THE DEFENDANT:  I do, sir.

6            THE COURT:  Okay.  So it is possible in this case what

7    I'm hearing, at least from counsel, is after your initial

8    sentencing you may want the Government to open that door based

9    on your cooperation in Mr. Gyires' case and/or you may want the

10   Government to open that door based on your cooperation in Mr.

11   Queenan's case.  And that's certainly --

12           THE DEFENDANT:  Yeah, I understand.

13           THE COURT:  -- something that you are hoping for?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  So there, again, oftentimes in a

16   situation like that even though you would have been sentenced,

17   Mr. Cohen as your lawyer, would be calling Mr. Gyires and Mr.

18   Queenan and saying, hey, are you going to file a Rule 35 for my

19   client.  He has really helped you.  They would advocate for you

20   to try to convince the Government to file that motion.

21           And again, here, Mr. Cohen can only do that to a

22   limited extent.  Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Okay.  Now, maybe they can figure out how

25   to tag-team so Mr. Cohen will call at 9:00 and Mr. Della Fera

1  will call at 9:15.  But you understand Mr. Cohen, individually,

2  cannot fully advocate for you to get a Rule 35 motion because

3  he doesn't know what you are doing in Mr. Queenan's case.

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And again, the worse case scenario for you

6  in some respects would be this.  You fully cooperate with the

7  Government in Mr. Queenan's case.  Because Mr. Della Fera is

8  not there at your initial sentencing and Mr. Cohen doesn't

9  know, no one ever tells Judge Canon anything about what you are

10  doing in Mr. Queenan's case.

11          And then, down the road the Government decides never

12  to file that Rule 35 motion and you have given up forever your

13  chance to get a sentencing benefit based upon your cooperation

14  in Mr. Queenan's case.

15          Do you understand that is the risk you are taking if

16  you decide today to have Mr. Cohen continue to represent you at

17  the sentencing?

18          THE DEFENDANT:  Yes, I have understand, sir.

19          THE COURT:  Okay.  So those are the risks and I want

20  to make sure that you understand fully that those are the risks

21  that you are facing.

22          You understand?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Okay.  And again, I am going to preface

25  what I'm about to say by suggesting I think Mr. Cohen, I have

1   no reason to believe that Mr. Cohen has been anything but the

2   best possible lawyer he can be for you, but I want to make sure

3   you understand that if you want to avoid those risks, we would

4   appoint Mr. Della Fera to represent you now.

5          We would excuse Mr. Cohen with the Court's thanks and

6   Mr. Della Fera would take over.  And then, you could go to

7   sentencing in front of Judge Canon in a few weeks and you would

8   have a lawyer there who could argue all of these things then.

9          He could argue to Judge Canon right then and there

10  that he has been cooperating in Mr. Gyires' case.  He has been

11  cooperating in Mr. Queenan's case.  You should give him a

12  reduction for all these reasons.  Those arguments could be made

13  and you would not take on the risk that you would do all that

14  work and never get the benefit of it.

15         So do you understand that if that is what you wanted,

16  the Court would appoint Mr. Della Fera to represent you at your

17  sentencing?

18         THE DEFENDANT:  Yes, sir.  I understand that.

19         THE COURT:  So you understand that if you choose to

20  keep Mr. Cohen as your lawyer, you are agreeing to have a

21  lawyer at your sentencing who has a legal conflict who is going

22  to be limited in some of the arguments that he can make.  And

23  as a result of that, you may not get the sentence ultimately

24  that you want.

25         THE DEFENDANT:  I understand, sir.

1          THE COURT:  You understand all of that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  All right.  I will come back to

4    this in a second, but I'm going to ask you before this hearing

5    is over if you then want to waive your right.  You have a

6    constitutional right to conflict-free counsel.  If you want to

7    waive that right, that's why I'm asking you all these questions

8    so I can determine whether your decision to waive that is

9    knowing, voluntary, and fully informed.

10          But let me be clear, if I determine and if Judge Canon

11   agrees that you can waive that right to conflict-free counsel

12   and you go to sentencing, and you have Mr. Cohen represent you

13   at sentencing and you are ultimately unhappy with the way that

14   this all plays out, you are not going to be able to come back

15   on appeal, or on some sort of collateral attack, or a motion to

16   set aside your sentencing on the grounds that your lawyer had a

17   conflict.

18          You are giving up the right to ever make that

19   argument.  Do you understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  Now, oftentimes when someone is

22   faced with this sort of a decision, like you have to make, we

23   recommend to them to talk to conflict-free counsel who can

24   advise them on all the things that I've talked to you about,

25   but who would talk to you in more depth about it.

1           Mr. Della Fera is here.  Have you had a chance to talk

2    to him about the potential conflicts in this case and whether

3    you want to go ahead and waive any conflict that Mr. Cohen may

4    have?

5           THE DEFENDANT:  We went over it a couple of weeks ago,

6    actually.

7           THE COURT:  Okay.  So you've had a chance to talk to

8    Mr. Della Fera privately about that?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Did he answer all of your questions about

11   it?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Were you satisfied that he answered your

14   questions in a way that you understood them?

15          THE DEFENDANT:  I was, sir.

16          THE COURT:  Okay.  Do you feel like you need any

17   further consultation either with Mr. Della Fera, or any other

18   independent lawyer, before deciding if you want to waive your

19   right to have conflict-free counsel?

20          THE DEFENDANT:  No, sir.  I'm good.

21          THE COURT:  You're satisfied?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  Let me ask you a couple of

24   other just preliminary questions I should have asked in the

25   beginning, Mr. Roman.  I think I know the answer to these, but

1    I've got to ask them anyway.

2            How far did you go in school?

3            THE DEFENDANT:  GED, sir.

4            THE COURT:  Okay.  And have you ever been treated for

5    any mental illness or addiction to narcotic drugs of any kind?

6            THE DEFENDANT:  No, sir.

7            THE COURT:  Are you currently under the influence of

8    any drugs, alcohol, or anything else that effects your ability

9    to understand what is happening here today?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  Have you taken any medication whatsoever

12   in the last 24 hours, even if it was prescribed by a doctor?

13           THE DEFENDANT:  No, sir.

14           THE COURT:  Let me ask Mr. Cohen.

15           In your dealings with Mr. Roman, and obviously I'm not

16   asking you to disclose attorney/client confidences, but have

17   you ever had any difficulty communicating with him or having

18   him understand things when you explain them to him?

19           MR. COHEN:  No, I have not, Your Honor.

20           THE COURT:  Mr. Della Fera, same question to you.

21           MR. DELLA FERA:  No, I have not, Judge.

22           THE COURT:  Okay.  So neither of you have any doubts

23   about Mr. Roman's competency to make this decision.

24           Mr. Cohen?

25           MR. COHEN:  No, Judge.

```
 1          THE COURT:  Mr. Della Fera?

 2          MR. DELLA FERA:  No.

 3          THE COURT:  Okay.  All right.  Let me ask the

 4  Government.  I'll start with Mr. Gyires.

 5          Mr. Gyires, are there any other areas of inquiry that

 6  you believe the Court should make?

 7          MR. GYIRES:  No, Your Honor.

 8          I was going to say the benefit of -- obviously there

 9  are multiple ways to find a resolution here.  If the benefit of

10  keeping both counsel is that Mr. Cohen has been on the case for

11  a year and-a-half or so.

12          THE COURT:  Uh-huh.

13          MR. GYIRES:  So that's the rationale I think.

14          Obviously the Court is aware that the Defendant hears,

15  too, from me that that's the benefit is if Mr. Cohen leaves the

16  case, then maybe there's that risk of Mr. Della Fera not

17  knowing the full extent no matter how much we try of explaining

18  what happened.

19          So it makes sense, I think, to have them both and

20  that's the resolution.

21          THE COURT:  All right.  Thank you.

22          Mr. Queenan, were there any other areas of inquiry

23  that you wanted me to undertake?

24          MR. QUEENAN:  No, Judge.  Thank you.

25          THE COURT:  All right.  Thank you.
```

1          Mr. Roman, let me circle back just briefly on what

2     Mr. Gyires was mentioning as well.

3          While it is true that Mr. Della Fera is not

4     up-to-speed as much as Mr. Cohen is, the limitation on Mr.

5     Della Fera and Mr. Cohen sharing information is a

6     one-directional limitation.

7          So, in other words, Mr. Della Fera cannot tell Mr.

8     Cohen anything about what he is doing to help you in regards to

9     Mr. Queenan's case.

10          Mr. Cohen is free to tell Mr. Della Fera everything

11     that has been going on in your case.  And certainly, if for

12     some reason you decided that you preferred to have Mr. Della

13     Fera take over your sentencing, Mr. Cohen would make sure he

14     communicated all that.

15          I know Judge Canon has said she wouldn't continue the

16     case.  But, in a circumstance like this, I think judges are

17     very confident and careful to make sure that Mr. Della Fera

18     would have enough time to be prepared and to fully advocate on

19     your behalf.

20          But you do understand that there is also that possible

21     risk that if you don't waive these rights, Mr. Della Fera can't

22     replicate everything that Mr. Cohen knows?

23          THE DEFENDANT:  I do, sir.

24          THE COURT:  Okay.  All right.  Very well.

25          Mr. Roman, do you have any questions you want to ask

1   me?  I have been talking a lot to you, but I want to make sure

2   that if you have any questions about this situation or you need

3   more time to think about it, please just let me know.  Is there

4   anything else you want to ask me?

5            THE DEFENDANT:  No, sir.  I'm fine.  I understand.

6            THE COURT:  So understanding the conflict that Mr.

7   Cohen is laboring under and understanding the risks that you

8   will be taking if you proceed to sentencing, having Mr. Cohen

9   represent you at the sentencing, is it your desire today to

10  waive your right to conflict-free counsel and to have Mr. Cohen

11  and only Mr. Cohen represent you at the sentencing before Judge

12  Canon?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Okay.  I find that Mr. Roman's decision to

15  waive his Sixth Amendment right to conflict-free counsel is a

16  knowing, voluntary, and fully informed decision.  That he is

17  competent today and capable of making that decision.

18           And I will recommend that Judge Canon accept that

19  waiver.  We will have the transcript of this afternoon's

20  proceedings transcribed.  We will communicate the record to

21  Judge Canon with a report and recommendation to that effect.

22           All right.  Counsel, while we are here, anything else

23  Mr. Cohen, that you think we should take up while we are

24  together today?

25           MR. COHEN:  No, Judge.  Thank you.

1        THE COURT:  All right.  Thank you.

2        Mr. Della Fera?

3        MR. DELLA FERA:  No, Judge.

4        THE COURT:  Mr. Gyires?

5        MR. GYIRES:  I hate to mention another thing.

6        So at the sentencing hearing it is just Mr. Cohen,

7   which means I won't be able to say anything about Mr. Queenan's

8   case.

9        THE COURT:  You can say whatever you want to say, I

10  think.  Look, I'm not saying that Mr. Della Fera can't be

11  there.  Mr. Della Fera may very well choose to be there so he

12  can hear what you have to say.

13       What I am saying is that if Mr. Roman wants to proceed

14  to sentencing and have Mr. Cohen continue to represent him,

15  either in whole or in part at the sentencing, that is -- unless

16  I understand it, Mr. Roman, what you are waiving, correct?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  That's what you want.  You want Mr. Cohen

19  to be there even if Mr. Cohen has some sort of a conflict?

20       THE DEFENDANT:  I do, sir.

21       THE COURT:  Okay.  I think that is all I can do.

22       Mr. Queenan, anything further from the Government?

23       MR. QUEENAN:  Nothing, Judge.  Thank you for allowing

24  me to appear by telephone.

25       THE COURT:  Of course.  No problem.

1          All right, everyone, I thank the parties and I will

2   excuse the parties and we will be in recess.

3          MR. GYIRES:  Thank you, Your Honor.

4          MR. COHEN:  Thank you, Your Honor.

5          (Thereupon, the proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5    accurate transcript of the audio recorded proceedings in the

6    above-entitled matter.

7

8

9

10
     03/10/21                      Bonnie Joy Lewis,
11                          Registered Professional Reporter
                               CASE LAW REPORTING, INC.
12                             7001 Southwest 13 Street,
                             Pembroke Pines, Florida 33023
13                                 954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25